RECEIVED CLERK

JAN 2· ·'06

**U.S. DISTRICT COURT**

FILED
U.S. DISTRICT COURT

2006 APR -3  A 11: 23

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| LARUE GREEN )<br><br>)<br><br>)<br>Plaintiff, )<br><br>)<br>v. )<br><br>)<br>UNITED STATES OF AMERICA, )<br><br>)<br>Defendant. )<br>) | [Proposed] **MEMORANDUM OPINION AND ORDER GRANTING UNITED STATES' MOTION TO DISMISS AND UNITED STATES' MOTION FOR SUMMARY JUDGMENT**<br><br>**Civil No. 2:04-CV-00757 DB** |

## INTRODUCTION

Plaintiff Larue Green ("Mrs. Green") filed the present quiet title action against the United States alleging that a redemption of real property by the Internal Revenue Service ("IRS") was improper. Mrs. Green asserts that the sale of the redeemed property did not occur, that if the sale occurred the amount tendered at that sale was incorrect, and that the IRS failed to follow the applicable statutes and regulations related to the redemption of real property. Before the Court are the United States' Motion to Dismiss and the United States' Motion for Summary Judgment. Oral argument was heard on both of these motions, and the following memorandum and order

1501470.1

are based upon the oral arguments of counsel, the written submissions of the parties, and a review of the relevant law.

## BACKGROUND[1]

On October 22, 1992, the IRS recorded with the County Recorder for Salt Lake County, Utah, a Notice of Federal Tax Lien ("Federal Tax Lien") in the amount of $1,282,138.91 related to the federal tax liabilities of Linda Noyes ("Ms. Noyes"). On March 28, 1995, a deed of trust concerning the real property at issue in the amount of $125,000, plus interest, was recorded with the County Recorder for Salt Lake County, Utah. Ms. Noyes was listed as the trustor on this deed of trust, with Capital Assets Financial Services as the beneficiary. Capital Assets Financial Services was controlled by Karl Prisbrey (hereinafter, this obligation shall be referred to as "the first deed of trust").

On March 28, 1995, a second deed of trust concerning the real property in the amount of $30,000, plus interest, was recorded with the County Recorder for Salt Lake County, Utah. Ms. Noyes was listed as the trustor on this deed of trust, with Mrs. Green as the beneficiary ("the second deed of trust").

On April 3, 1995, the IRS agreed to subordinate the Federal Tax Lien to the first deed of trust. On April 7, 1995, a subordination agreement to this effect was recorded with the County Recorder of Salt Lake County. The IRS did not subordinate the Federal Tax Lien to the second deed of trust, and at all times relevant to this action, the second deed of trust remained subordinate to the Federal Tax Lien. At this time, the priority in the chain of title was as follows: the first deed of trust, the Federal Tax Lien, and then the second deed of trust.

---

[1]     The following factual background is a summary of the undisputed facts provided to the Court by the United States. Mrs. Green did not dispute any of these facts in her opposition to the motion for summary judgment, and these facts are therefore deemed admitted. DUCivR 56-1(c).

1501470.1

On October 2, 1998, Stephen G. Homer ("Mr. Homer"), successor trustee to the second deed of trust, recorded a notice of default of that deed of trust with the County Recorder for Salt Lake County, Utah. On May 25, 2001, David C. West, as successor trustee to the first deed of trust, recorded a notice of default of that deed of trust with the County Recorder for Salt Lake County, Utah.

On November 30, 2001, a trustee's sale arising from the default of the second deed of trust was held in Salt Lake City, Utah. Mr. Homer was present at this sale as the successor trustee, as the agent of Mrs. Green in her role as the seller of the property interest subject to the second deed of trust, and as the agent of Mrs. Green in her role as a credit-bid buyer of the property subject to the second deed of trust. On December 21, 2001, Mr. Homer issued a Trustee's Deed for the real property to John F. Green and Larue Green. This Trustee's Deed was recorded the same day with the County Recorder for Salt Lake County, Utah. Although the Trustee's Deed indicated that Mr. and Mrs. Green paid the sum of $100,000.00 for the property at issue in this action, no funds actually changed hands. The sum of $100,000.00 was a credit bid by plaintiff, and was the approximate amount owed on the second deed of trust as of the date of the trustee's sale.

On September 10, 2002, an assignment of the first deed of trust to Green was recorded with the County Recorder, Salt Lake County, Utah. Mr. and Mrs. Green paid approximately $148,901.40 in exchange for the assignment of the first deed of trust to them. Mr. and Mrs. Green decided to buy the first deed of trust because they were aware that the Federal Tax Lien encumbering the real property was superior to their second deed of trust, and that the Federal Tax Lien's amount exceeded the property's fair market value.

1501470.1

On April 17, 2003, successor trustee to the first deed of trust, Mr. Homer, sent the IRS a copy of a Notice of Trustee's Sale pertaining to an intended foreclosure auction of the real property due to a default on the first deed of trust. The Trustee's Sale was scheduled for May 13, 2003, at 9:00 a.m. On that date and time, Mr. Homer conducted a trustee's sale of the real property at the Third Judicial District Courthouse, in Sandy, Utah. Mr. Homer again appeared at the trustee's sale as successor trustee, as the agent of Mrs. Green in her role as the seller of the property interest subject to the first deed of trust, and as the agent of Mrs. Green in her role as a bidder on the property subject to the first deed of trust.

Mr. Homer had represented Mrs. Green as her agent in the role of seller of an interest in real property, and as her agent in her role as a bidder on the real property, in three to five other transactions, including the prior Trustee's Sale of the second deed of trust. In each of these three to five transactions, Mrs. Green was the ultimate purchaser of the real property through a credit bid.

Neither Mrs. Green nor her husband gave Mr. Homer, as agent in the Green's capacity as the seller of the interest in the property, any specific instructions or restrictions as to how Mr. Homer was to conduct the sale, and did not dictate to Mr. Homer a minimum bid for the purchase of the interest being foreclosed upon at the Trustee's Sale on May 13, 2003. Neither Green nor her husband gave Mr. Homer, as agent in her capacity as a bidder on the real property, any specific instructions or restrictions as to how he was to conduct his bidding on her behalf, and did not dictate a minimum or maximum bid for the real property. In Mrs. Green's words, "[w]e never discussed it. I just left it up to him."

Mr. Homer was the only person who appeared at the May 13, 2003 Trustee's Sale. At that Trustee's Sale, Mr. Homer, as agent for Mrs. Green in her capacity as a bidder on the real

1501470.1

property, stated out loud words to the effect of "Larue Green credit bids the amount of $100,000." Mr. Homer, as trustee, then closed the trustee's sale.

During the afternoon of May 13, 2003, after the trustee's sale, Mr. Homer was contacted by telephone by Satinder Arora ("Mr. Arora"), a representative of the IRS, who inquired as to the amount that the subject property sold for at the trustee's sale. Mr. Homer stated words to the effect of "the opening bid was $100,000, that there were no bidders and no one else was there, and so the Greens' bought it for $100,000." During that telephone conversation, and after Mr. Homer stated that the property had been sold for $100,000, Mr. Arora informed him that the IRS might redeem the property for that amount. During that same conversation, after Mr. Arora informed Mr. Homer that any questions concerning this matter should be directed to his supervisor, Cindy Bouldin ("Ms. Bouldin").

On May 16, 2003, Mr. Homer contacted Ms. Bouldin concerning the Trustee's Sale on May 13, 2003. Mr. Homer stated to Ms. Bouldin that at the time he made the credit bid on behalf of Green, he did not know that the IRS would use this amount to calculate a redemption figure. Mr. Homer stated that now that he understood the effect of a credit bid of $100,000, he would instruct his client to not bring in any funds so that the sale would be voided. After Mr. Homer made these statements, Ms. Bouldin told Mr. Homer that because credit bids were not cash sales, whether or not his client brought him cash was irrelevant as to whether a sale had been completed.

On June 13, 2003, representatives of the IRS delivered to the Greens a Notice of Redemption, and a check in the amount of $100,591.48, which represented the amount of the sales price from the May 13, 2003 Trustee's Sale, plus interest from the date of the Trustee's

1501470.1

Sale until the date of redemption, as required by 28 U.S.C. § 2410(d).  On June 16, 2003, a

representative of the IRS recorded a Notice of Redemption with the Salt Lake County Recorder.

## ANALYSIS

Mrs. Green contends that she is the true owner of the subject property.  She brought the

present action[2] seeking: (1) a declaratory judgment that the IRS's redemption of the property was

defective (first cause of action); (2) to quiet title to the subject property upon the argument that

the property was never sold (second cause of action) and that the property was not properly

redeemed (third causes of action); (3) breach of third-party beneficiary contract (fourth cause of

action); (4) damages under the Federal Tort Claims Act for slander of title, intentional infliction

of emotional distress, negligent infliction of emotional distress, and tortious interference with

business relations (fifth cause of action), and (5) damages for the same acts as alleged in the fifth

cause of action, but brought under state law (sixth, seventh, eighth, and ninth causes of action).

The United States responded to causes of action one, four, five, six, seven, eight, and nine in its

Motion to Dismiss.  Causes two and three were responded to in the United States' Motion for

Summary Judgment.

## I.    Plaintiff's First Cause of Action is Barred by the Declaratory Judgment Act

The Declaratory Judgment Act, 28 U.S.C. § 2201, prohibits courts from entering a

declaratory judgment with respect to federal taxes.  An exception to this prohibition is

---

[2]      The Court notes that this is the second time Mrs. Green has brought the same, or
substantially the same, action.  The first action was dismissed without prejudice when Mrs.
Green failed to respond to the United States' Motion for Summary Judgment.  On the eve of the
United States' redemption of the real property at issue, Mrs. Green again filed her complaint, in
substantially the same form as before.  The United States' again responded to that complaint with
a motion to dismiss and a motion for summary judgment.  Neither was timely responded to, and
this Court issued a show cause order as to why this case should not be dismissed, ordering that if
a response to the United States' Motion for Summary Judgment was not made within fifteen
days, the case would be dismissed with prejudice.  Mrs. Green made a timely response to that
Order, although that response was devoid of citation to law.

1501470.1

permissible only where (1) it is clear that under no circumstances could the United States ultimately prevail, and (2) the requesting party would otherwise have no adequate remedy at law. *Enochs v. Williams Packing & Navigation Co.*, 370 U.S. 1 (1961).

As discussed below, the undisputed facts and law require a finding in the United States' favor. Even if that were not the case, declaratory relief is not proper in this case, as an adequate remedy at law exists: this quiet title action. However, plaintiff may not obtain injunctive or declaratory relief as part of a quiet title action claim. *Laino v. United States*, 633 F.2d 626, 629 (2nd Cir. 1980); *Fisher v. United States*, 860 F.Supp 680, 682-83 (D. Ariz. 1994).

**II.   The Real Property Was Sold for $100,000.00 at the May 13, 2003 Trustee's Sale**

Plaintiff's argument that the property was never sold is based upon a claim that the successor trustee, Mr. Homer, lacked agency to sell and/or bid at the Trustee's Sale for an amount less than what was actually owed on the first deed of trust, that he made a mistake as to the correct credit-bid amount,[3] and that the sale was not consummated for $100,000.

<u>A.</u>   <u>Mr. Homer Acted as an Authorized Agent of Mrs. Green at the Trustee's Sale</u>

Under Utah state law, the question of whether an agency relationship exists is normally one of fact; however, where the evidence as to the agent's authority is undisputed, or different logical inferences may not be drawn from the facts, the question becomes one of law. *Calhoun v. State Farm Mut. Auto. Ins. Co.*, 96 P.3d 916, 925 (Utah 2004); *Mecham v. Consolidated Oil & Transp. Inc.*, 53 P.3d 479, 482 (Utah App. 2002). The fact that Mr. Homer acted as an agent for plaintiff in her capacity as seller and also as a buyer at the trustee's sale on May 13, 2003 is undisputed. In her deposition, Mrs. Green referred to Mr. Homer as "my agent/attorney" when

---

[3]      These first two claims were asserted for the first time in Mrs. Green's opposition to the United States' Motion for Summary Judgment.

1501470.1

describing his role at the May 13, 2003 trustee's sale.  Furthermore, during oral argument Mr. Homer admitted that he acted as Mrs. Green's agent at the May 13, 2003 Trustee's Sale.

The fact that Mr. Homer had a dual role at the trustee's sale was not a violation of Utah law or a conflict of interest.  The Utah Supreme Court has specifically held that, with both principals' knowledge and consent, one agent may represent both parties in a particular transaction.  *Utah State University v. Sutro & Co.*, 646 P.2d 715, 722 (Utah 1982).  It is clear from the record that Mr. Homer had the express authority of Mrs. Green to appear on her behalf as both seller and bidder at the trustee's sale on May 13, 2003.  No conflict of interest existed.

B.      Mr. Homer's Mistake is Attributed to Mrs. Green

In her opposition to the United States' Motion for Summary Judgment, Mrs. Green alleges that Mr. Homer was not authorized to enter a bid below the full amount she had invested in the property.  However, when specifically questioned on this point in her deposition, Mrs. Green stated "[w]e never discussed it.  I just left it up to him."  Furthermore, at oral argument, Mr. Homer admitted that he was not given any instructions as to what was an appropriate minimum sale price for the property, or what was an appropriate minimum bid price.

Actual authority to act as the agent of another may, of course, be express or implied. *Diston v. EnviroPak Med. Prods. Inc.*, 893 P.2d 1071, 1076 (Utah App. 1995).  Implied authority is actual authority based upon the premise that whenever performance of certain business is confided to an agent, such authority carries with it the authority to do any collateral acts which are natural and ordinary incidents of the main act or business expressly authorized. *Zions First Nat. Bank v. Clark Clinic Corp.*, 762 P.2d 1090, 1094-95 (Utah 1988); *B & R Supply Co. v. Bringhurst*, 503 P.2d 1216, 1217 (Utah 1972); *Bodell Const. Co. v. Stewart Title Guar. Co.*, 945 P.2d 119, 124 (Utah App. 1997).  Based upon this testimony and the facts before the Court, it is

1501470.1

clear that Mr. Homer had actual authority from Mrs. Green to establish, at Mr. Homer's discretion, an appropriate selling price for the property, as well as actual authority to enter bids for that property, on Mrs. Green's behalf. Regardless, it is undisputed in this matter that Mrs. Green expressly told Mr. Homer to foreclose upon and sell her interest in the real property at issue. She also expressly authorized him to enter a bid for the property on her behalf. Implied within these instructions is the authority to enter whatever bid he considered appropriate as a buyer, and the authority to accept a bid as seller.

Where no specific instructions are given, the amount of the bid to be set is a matter for the agent to determine at the auction. *Naujoks v. Suhrmann*, 337 P.2d 967, 969 (Utah 1959) ("The defendants having selected their employee and agent, are chargeable with responsibility for his activities and knowledge within the scope of his assigned duties and those reasonably and necessarily incident thereto."). Having given her personally-selected agent the authority to sell and buy the property at issue, Mrs. Green is bound by the consequences of her agent's actions. *Id.*

C.     Utah Law Required Mr. Homer to Accept the Credit Bid, the Property Was Sold for $100,000, and a Physical Exchange of Money Was Not Required

At the May 13, 2003 Trustee's Sale, Mr. Homer, as Mrs. Green's agent, entered and accepted a credit bid of $100,000.00 for the property at issue in this case, and then adjourned the sale. The question before the Court is the legal effect of these actions.

The Utah Court of Appeals addressed a similar fact pattern in *Thomas v. Johnson*, 801 P.2d 186 (Utah App. 1990). The plaintiff in that case, as here, foreclosed on a defaulted trust deed, and held a foreclosure sale on the scheduled date. In *Thomas*, the plaintiff entered the only bid at the sale, and made that bid in the form of a credit bid. The defendant later challenged the propriety of that bid.

1501470.1

The Court held that, under relevant Utah statutes, each bid at a trustee's sale constitutes an irrevocable offer, and that once the bid is accepted by the trustee, a binding contract of sale is formed between the parties. *Thomas v. Johnson*, 801 P.2d at 188-89; UTAH CODE ANN. § 57-1-27(1)(a) (2003). In a footnote, the Court specifically addressed the issue of credit bids, stating:

> [W]e believe that a credit bid by the beneficiary of a trust deed is a bid "payable in lawful money of the United States," even though the trustee does not go through the meaningless motions of taking, with one hand, actual money from a person as the highest bidder at the trust sale and then returning the money with the other hand to the same person as the trust deed beneficiary.

> *Thomas v. Johnson*, 801 P.2d at 188, n.1.

The Court in *Thomas* goes on to address the issue of acceptance of a credit bid, stating, "[a]s the only bid, it was also the highest bid, which the trustee was required by the statute to accept. When the trustee accepted that bid and received payment from Thomas in the form of Johnson's indebtedness . . ., the sale of the property was complete." *Thomas*, 801 P.2d at 189; UTAH CODE ANN. § 57-1-27(1)(a).

In this case, Mrs. Green's credit bid was the only bid entered at the trustee's sale. Under Utah law, that sole bid was the highest bid. Mr. Homer, as trustee, was required by Utah law to accept that bid. In his opposition to the United States' Motion for Summary Judgment, Mr. Homer admitted that he accepted this offer. Opposition, at 5-6. As a credit bid, payment was deemed made in the form of the trustor's debt at the time of the sale. *Id.* When Mr. Homer stated "Larue Green credit bids $100,000" at the May 13, 2003 Trustee's Sale and then ended the sale, Mr. Homer sold the property to Mrs. Green for the amount of the credit bid of $100,000.

The Utah Supreme Court's holding in *Thomas* directly refutes plaintiff's argument that since Mrs. Green did not physically pay herself $100,000.00 the day after the sale, no sale took place. *Thomas v. Johnson*, 801 P.2d at 188, n.1. This Court finds that *Thomas'* court's analysis

1501470.1

is persuasive. Moreover, Mrs. Green's current interpretation of what is required after a credit bid is made, is not one ever used by the Greens in the approximately ten other such foreclosure sale credit bid transactions,[4] including the previous Trustee's Sale of the second deed of trust on this exact same property, by this exact same agent. In none of those credit bid foreclosures did any cash change hands. Therefore, it is clear that as a matter of law, when Mr. Homer stated "Larue Green credit bids $100,000" at the May 13, 2003 Trustee's Sale, he entered a lawful, irrevocable bid for the real property, that the bid was accepted under Utah state law, and that a proper sale of the real property at issue occurred. The credit bid did not require that money actually change hands.

## III.    The United States Properly Redeemed the Real Property

Federal law overwhelming supports the position that the proper redemption price is the amount bid at the trustee's sale, even where that amount may not discharge the entire secured indebtedness. The amount the IRS is required to pay in a redemption is set forth in 28 U.S.C. § 2410(d)(1), as "[t]he actual amount paid by the purchaser at such sale (which, in the case of a purchaser who is the holder of the lien being foreclosed, shall include the amount of the obligation secured by such lien to the extent satisfied by reason of such sale) ...," plus interest from the date of sale at 6%. This provision is further explained at 26 C.F.R. § 301.7425-4(b)(2)(ii). The regulation specifically provides that:

> Where, after the sale, the holder of the lien being foreclosed has the right to the unpaid balance of the amount due him, the amount legally satisfied by reason of

---

[4]    In her deposition, Mrs. Green testified that she had made successful credit bids at foreclosure sales on approximately ten other occasions, three to five of which were made by Mr. Homer.

1501470.1

the sale does not include the amount of such lien to the extent a deficiency judgment may be obtained therefor.[5]

The cases interpreting this statutory and regulatory framework have uniformly agreed that the amount to be paid by the United States to redeem real property is calculated based on the amount bid at the foreclosure sale, not the amount of the secured debt of the foreclosing lienholder. In *Southwest Products Co., Inc v. United States*, 882 F.2d 113 (4th Cir. 1989), plaintiff was the holder of a trust deed in the face amount of $1.1 million, with outstanding principal and interest due of $1.3 million. Plaintiff foreclosed on the trust deed, and at the trustee's sale bid $1 million. Some four months later, seven days before the United States' statutory right to redeem the property would have expired, plaintiff sent a letter to the trustee stating that it withdrew its bid, and requesting that a new trustee's sale be conducted. The United States redeemed the property for $1,020,000.00, representing plaintiff's bid plus interest, and the plaintiff filed a quiet title action.

The Fourth Circuit Court of Appeals held that the United States' redemption was properly made for the price bid at the trustee's sale. The Court noted that, under applicable treasury regulations,[6] the date of sale is deemed to be the date the public sale is held. Therefore, "the government's right of redemption is not triggered by the transfer of the property's title. Rather, it is triggered by the occurrence of the "sale" at the public auction." *Southwest Products*, 882 F.2d at 117. The Court went on to note that the fact that the plaintiff had not paid the applicable closing costs of the trustee's sale did not invalidate the sale because, despite that failure, plaintiff "possessed an interest in [the property] to which the IRS could succeed upon

---

[5]    *See* Utah Code Ann. § 57-1-32, permitting a secured creditor to obtain a deficiency judgment where the entire secured amount is not discharged in a trustee's sale.

[6]    *See* 26 CFR § 301.7425-4.

1501470.1

redemption." *Id.* The Court found this interest to exist despite the fact that Virginia law required a deed to transfer property, and there, as is the case here, no deed for the original sale was ever prepared or recorded. *Id.*

The Fifth Circuit Court of Appeals addressed a similar issue in *Delta Sav. & Loan Ass'n, Inc. v. Internal Revenue Service*, 847 F.2d 248 (5th Cir. 1988). The Fifth Circuit also held that the amount the mortgagee paid at the foreclosure sale, rather than the entire amount of the underlying debt, was the amount the United States was required to pay in order to redeem the property at issue. There again, as is the case here, the mortgagee was the successful bidder, and the bid was a credit, rather than cash, bid. Also, as is the case here, the amount bid by the mortgagee was lower than the total amount due on the debt. When the IRS attempted to redeem, the plaintiff refused to accept the check, arguing that the amount required to redeem was equal to the full amount of the debt.

In a detailed opinion, the Fifth Circuit rejected plaintiff's argument. The Court noted that the intent of Congress in establishing the United States right to redeem was "not to ensure that the lienholder never realizes any loss on its loan ...." Instead, the statutory purpose is to maximize the recovery to the United States, and to operate to the benefit of delinquent taxpayers. *Delta Savings*, 847 F.2d at 250 - 251(quoting S. Rep. No. 1708, 89th Cong., 2d Sess. 31-32, *reprinted in* 1966 U.S.Code Cong & Admin. News 3722, 3753. *See also Vardanega v. Internal Revenue Service*, 170 F.3d 1184 (9th Cir.), *cert. denied* 528 U.S. 872 (1999), ("the purpose of the United States' right of redemption was to prevent foreclosure purchasers from buying real property for less than the fair market value, selling the property, and keeping the profit. Instead, Congress intended that any excess profit from the sale of property to which a tax lien attached be applied for the benefit of the delinquent taxpayer"). The *Delta Savings* Court noted that there, as

1501470.1

is the case here, the lienholder retained the right to sue for a deficiency judgment to satisfy the remainder of the secured obligation.[7]

The Court further noted that, were it to accept the argument that the full amount of the obligation owed, rather than the purchase price, was required to redeem, there would be no incentive for a secured creditor of a debtor to bid a fair price at its foreclosure sale. In fact there would instead be an incentive "to bid a below-market price in an attempt to maximize its gains by reselling the foreclosed property at a substantial profit—knowing that any redemption by the government would have to be for the full amount of the debt—while also pursuing its deficiency claim against the debtor." *Delta Savings*, 847 F.2d at 251.

Another similar case is found at *Fidelity Federal Sav. and Loan Ass'n v. United States*, 445 F.Supp. 683 (M.D.Tenn. 1978). In that case, plaintiff, the foreclosing lienholder, had instructed the trustee to essentially sell the property to itself for one-half of the obligation due on the note.[8] When the United States notified plaintiff of its intent to redeem the property for this price, the lienholder filed an "instrument of correction" claiming that the actual amount received at the foreclosure was the full amount owed on the mortgage.[9] The District Court rejected this belated attempt to alter the terms and conditions of the sale, and confirmed that the redemption amount was equal to the amount bid at the sale rather than the full amount of the underlying debt. *Id.* at 687.

---

[7]    As noted earlier, Utah Code Ann. § 57-1-32, permits a secured creditor to obtain a deficiency judgment where the entire secured amount is not discharged in a trustee's sale.

[8]    Once again, the trustee, representing both sides of the transaction, entered a credit bid on behalf of the mortgage holder.

[9]    Similarly, Mr. Homer's May 14, 2003 letter to the IRS states that "the reported 'sale' was NOT CONSUMMATED and has been voided as a nullity."

1501470.1

In each of the above-cited cases, a lien holder made a credit bid at a foreclosure sale in an amount substantially less than the full amount secured by the obligation. When they discovered that a consummated sale entitled the United States to redeem the real property for the amount successfully bid, they attempted through various methods and arguments to undo the original sale and increase the amount bid on the property so as to defeat the United States' right of redemption. That is exactly what the plaintiff here is attempting to do. However, as is clear from the statute, the regulation, and the case law, the pound of the auctioneer's gavel may not be unmade. Mrs. Green is bound by the price bid by her agent for the property at the May 13, 2003 redemption sale. The amount tendered to her by the United States in redemption of the real property was properly calculated pursuant to 28 U.S.C. § 2410(d).

Furthermore, the United States' redemption was timely. Section 7425(d) of Title 26, United States Code, gives the United States the right to redeem real property within a period of 120 days from the date of sale. The Trustee's Sale in this case occurred on May 13, 2003. The United States delivered the redemption check to the Greens on June 16, 2003, well within the statutory 120 day time limit. That same day, the United States recorded a certificate of redemption with the Salt Lake County Recorder, as required by statute. Accordingly, a proper redemption was made.

**IV.     Plaintiff's Fourth Cause of Action for Breach of Third-Party Beneficiary Contract Claim Is Within the Exclusive Jurisdiction of the United States Court of Federal Claims**

Pursuant to the Tucker Act, 28 U.S.C. Section 1491(a)(1), claims against the United States, in excess of $10,000, founded upon any express or implied contract with the United States are within the exclusive jurisdiction of the United States Court of Federal Claims. *See* 28 U.S.C. §§ 1346 and 1491(a)(1); *see also North Side Lumber Co. v. Block*, 753 F.2d 1482, 1485

1501470.1

n.5 (9th Cir. 1985). Mrs. Green's fourth cause of action involves only straightforward contract

issues. Mrs. Green has not identified a single provision of the internal revenue laws that the

Court would be required to interpret or apply in order to resolve this cause of action.

Accordingly, the Plaintiff's claim is indisputably within the exclusive jurisdiction of the United

States Court of Federal Claims pursuant to the Tucker Act, and dismissal of that cause of action

is required by this Court. Mrs. Green's fourth cause of action must be dismissed for lack of

subject matter jurisdiction.

**V.      This Court Lacks Jurisdiction to Hear Plaintiff's Fifth Cause of Action, Tort Claims
         Raised under the Federal Tort Claims Act**

The United States, as a sovereign entity, may be sued only to the extent that it has

consented to such suit by statute. *United States v. Mitchell*, 445 U.S. 535, 538 (1980); *Price v.

United States*, 7 F.3d 968, 969 (10th Cir. 1993). Absent a waiver, sovereign immunity shields

the United States and its agencies from suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994);

*Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989). This shield extends to the IRS, and a

waiver of sovereign immunity is required to sue the United States concerning IRS actions.

*Barmes v. United States*, 199 F.3d 386, 388 (7th Cir. 1999); *Beneficial Consumer Discount v.

Poltonowicz*, 47 F.3d 91, 94 (3rd Cir. 1995); *McMillen v. United States Department of Treasury*,

960 F.2d 187, 188 (1st Cir. 1991).

Any waiver by the United States of its sovereign immunity cannot be implied, but must

be "unequivocally expressed," and such waivers must be "construed strictly in favor of the

sovereign." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992); *Bowman v. United

States*, 65 F.3d 856, 857 (10th Cir. 1995) ("[u]nder the doctrine of sovereign immunity, the

United States cannot be sued unless it consents to be sued, and such consent must be

unequivocal").

1501470.1

Where the United States has not consented to suit, dismissal for lack of subject matter jurisdiction is proper. *F.D.I.C. v. Meyer*, 510 U.S. 471 (1994); *Merrill, Lynch, Pierce, Fenner, & Smith, Inc. v. Jacks*, 960 F.2d 911 (10th Cir. 1992). A party who brings an action against the United States bears the burden of establishing that the sovereign immunity of the United States has been waived. *Lonsdale v. United States*, 919 F.2d 1440, 1441 (10th Cir. 1990).

In Mrs. Green's fifth cause of action, she seeks relief under the Federal Tort Claims Act ("FTCA"). Congress has established, in the FTCA, 28 U.S.C. § 2679 *et seq.*, a method by which plaintiffs may under certain circumstances sue the United States for the tortious conduct of its employees. To the extent that Mrs. Green alleges any tortious conduct in her complaint, those allegations involve official actions IRS employees took as part of their assessment and collection activities. Lawsuits concerning the collection of taxes are specifically exempted from the class of suits that may be brought under the FTCA. 28 U.S.C. § 2680(c). *Burge v. Internal Revenue Service*, 74 A.F.T.R.2d (RIA) 6967 at *3 (10th Cir. 1994) (unpublished); *Nat'l Commodity & Barter Ass'n v. Gibbs*, 886 F.2d 1240, 1246 (10th Cir. 1989). *See also Fishburn v. Brown*, 125 F.3d 979, 982 (6th Cir. 1997); *Jones v. United States*, 16 F.3d 979, 980 (8th Cir. 1994). *Hutchison v. United States*, 677 F.2d 1322, 1327 (9th Cir. 1982). This Court further notes that plaintiff has made no showing that she filed an administrative claim for damages, a threshold requirement prior to bringing suit under the FTCA. Failure to file such a claim requires dismissal of an FTCA action. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Duplan v. Harper*, 188 F.3d 279 (10th Cir. 1999). Sovereign immunity has not been waived as to Mrs. Green's fifth cause of action.

1501470.1

**VI.     Plaintiff's Sixth Through Ninth Causes of Action, State Law Tort Claims, Are Barred By The Federal Tort Claims Act**

Plaintiff's sixth, seventh, eighth and ninth causes of action all assert common law tort claims based on acts taken by the individual defendants while acting in their official capacities. The exclusive remedy for nonconstitutional torts by government employees acting within the scope of their employment is a suit against the United States under the FTCA. *See* 28 U.S.C. § 2679 *et seq.* However, as noted above, lawsuits concerning the collection of taxes are specifically exempted from the FTCA. Therefore, the United States has not waived sovereign immunity for the actions complained of in plaintiff's sixth, seventh, eighth and ninth causes of action.[10]

## CONCLUSION

Based on the analysis of the facts and law, it is clear that as a matter of law, the property was sold at the May 13, 2003 foreclosure sale, that the property was purchased by the plaintiffs in a valid credit bid of $100,000, and that the United States properly redeemed the real property under 18 U.S.C. § 1920 and 26 U.S.C. § 7425. Furthermore, it is clear that plaintiffs' remaining causes of action fail to state claims upon which relief can be granted or are otherwise barred by this Court's lack of jurisdiction to hear them. Therefore, the United States is entitled to judgment in this case as a matter of law.

---

[10]     Even if jurisdiction existed for a tort action, because, as stated above, the United States acted properly in redeeming the property, plaintiff's complaint fails to state a claim in tort.

1501470.1

Accordingly, this Court GRANTS the United States' Motion to Dismiss as to plaintiff's first, fourth, fifth, sixth, seventh, eighth, and ninth causes of action, and GRANTS the United States' Motion for Summary Judgment as to plaintiffs' second and third causes of action.

DATED this 30th day of ~~January~~ *MARCH*, 2006.

_Dee Benson_
Dee Benson
United States District Judge

Respectfully submitted this 23rd day of January, 2006.

PAUL M. WARNER
United States Attorney

JEANNETTE F. SWENT
Assistant United States Attorney

ANTON L. JANIK, JR.
Trial Attorney, Tax Division
Civil Trial Section, Western Region
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, DC 20044-0683
Phone: (202) 353-0300

1501470.1